Here, Infrassure v. First Mutual Transportation Assurance. Good morning. May it please the court, I'm Burke Wells, attorney for FemTAC, appellant in this matter. Before I discuss the Titles Clause, I want to start with paragraph C of Infrassure's Certificate of Reinsurance because that paragraph provides the simplest way of resolving this appeal. If you have the record in front of you, please turn to page 145 of the joint appendix. The first sentence of paragraph C provides that the of the property insurance policy that FemTAC issued to MTA. What I'd like to do is explain the significance of the first two sentences of that paragraph, which show the relationship of the London Arbitration Clauses to the other possible dispute resolution mechanisms in here. The first sentence of paragraph C says that the Certificate of Insurance follows Form 2, or that is, incorporates all the terms and conditions of the property insurance policy that FemTAC issued to MTA. That means that at this point, reading the first sentence, this certificate, Infrassure's Certificate, consists of both the certificate itself and the underlying property policy. There's a problem, however, because the Infrassure Certificate now has four dispute resolution provisions as part of it. One from the property policy, which says that disputes are to be litigated in a U.S. court, that's section 49 of the Why does that affect the dispute between the ceding company and the reinsurer? Because of what the second sentence goes on to say, Your Honor. So the first sentence poses that litigation in a U.S. court provision that you find in the underlying policy. It also implicates three other dispute resolution provisions. It incorporates what's in the vestigial clause that calls for litigation exclusively in the U.S. It's vestigial. Why are we worried about that? Because I'm trying to show the relationship between the first sentence and the second. So let me move to the second. The question that the first sentence raises is, What's the result with all these dispute resolution provisions that are supposed to be part of the certificate? The second sentence answers that question by providing, notwithstanding the provisions of the first sentence, that the certificate is subject to, is governed by the London Arbitration Clauses, and that's clauses with an S, plural. It's not referring to something unitary. It's referring to multiple clauses. And I think there's no dispute here that the term London Arbitration Clauses refers to the text of endorsement number two. The title. I'm sorry, not the title, but the text. So the second sentence tells the reader that if there is any dispute, the certificate is governed not by the litigation provision in the property policy, or by the litigation or New York arbitration provisions in the appeal, and then for sure has no answer to it. But isn't this part of the same form that contains the arbitration clause at U? Isn't what you just read part of the same form that contains the arbitration clause at paragraph U? Yes, Your Honor, that's correct. The certificate contains endorsement number two, which contains these London Arbitration Clauses. No, that's not what I asked you. Could you turn to page 150, paragraph U. It comes after T. Yes, Your Honor. So why wouldn't we start with that and ask whether there is any endorsement that undoes that or overrides it? Well, there is indeed, Your Honor. I was simply walking through the agreement. What does this paragraph C? How do you reconcile paragraph C, which says the London Arbitration Clauses, which, by the way, are not part of the facultative certificate unless it's in an disinterested act of reform or offices? Well, several ways. First, both of those are in the certificate. If you look at the top— I know they're both in the certificate. The question is, how do you reconcile them? I reconcile them two ways. I say that paragraph C states a rule that applies in all cases that the London Arbitration Clauses apply, regardless of the title of endorsement number two. And secondly, that endorsements supersede body text and accordingly— What I see is a London Arbitration Endorsement, which is not one of the clauses of the original certificate. It's made part of the certificate. If you see the top of each of those pages of endorsement number two, both pages say Certificate of Facultative Reinsurance. I understand, but how would you read paragraph C with its reference to London Arbitration Clauses if the endorsement number two were not attached to that form? So, Your Honor's question is the hypothetical? How would I read— Well, I guess it's hypothetical. How would I read paragraph C— We are dealing with a facultative certificate and then we're dealing with endorsements. You just read me something out of the facultative certificate, which can be issued with or without the endorsement. If it was issued without the endorsement, what would the London Arbitration Clauses phrase be used to reference? I don't know what it would reference, Your Honor. I think that would be a troublesome interpretive point that's not presented in this case. That's good. Okay. But in fact, I think it illustrates another point, which is that if this type of certificate were presented to another insurer, it could delete endorsement number two and effectively present the same problem that you just raised with paragraph C. In other words, reinsurers who were presented this certificate had the option of striking endorsement number two, and those that did could invoke New York arbitration. The point of paragraph C is to create a general rule that sets up the standard rule that London would be the place of arbitration, which is quite reasonable for at least a couple of reasons. First of all, London is a place where there's a deep pool of reinsurance practitioners, so it would be easy to fill a panel. There isn't in New York. Well, Your Honor, there is, but London is known for that, so it makes sense to have London as that. You do it in Bermuda then. I mean, the question is, what is the contract? Agreed, and I'm trying to explain that the contract sets up a general rule in which London arbitration applies. If paragraph C, if the aim was to accomplish that with paragraph C, why not just delete paragraph U? I think, well, first of all, I can only speculate because the record doesn't show how this was put together, but if I had to speculate, I would say that the drafters anticipated that some reinsurers might not want London arbitration, and they left section U in so that that might be an option that could be easily indicated by striking endorsement number two. Your Honor, the other reason I think that London may have been chosen as the general rule is simply that that's a place that all or most insurers are both able and willing to appear for arbitration. So the reader of this agreement, and one would have expected any careful reinsurer to go through this agreement from start to finish, would start with paragraph C, at least in terms of the highlights for the purpose of this appeal, would start with paragraph C, would see the reference to the London arbitration clauses, would then go to paragraph U, which the reader knows should be disregarded based on what paragraph C says. Why isn't it crossed out? You know, W is crossed out, deleted. Why isn't U crossed out, deleted? Well, Your Honor, I don't know. Infrasure left it in. The fact is that from Fintech's point of view, it was not necessary to— Infrasure left it in, but your client accepted the certificate and its terms. It did, but it didn't need to cross it out because both paragraph C and the fact that endorsements control over body text meant that it was unnecessary to touch that. We'll hear the other side. Thank you. Thank you. May it please the Court, William Adams for Infrasure. The district court correctly ruled that the general arbitration provisions in paragraph U govern the party's re-insurance—in the party's re-insurance agreement govern the party's dispute here. So what do you make of paragraph C, which has now become the center of focus here? Nothing in paragraph C says that the London arbitration clauses govern every arbitration dispute that could arise under the agreement. It looks understood and agreed that the re-insurance here under is subject to London arbitration. That's correct, but it does not say subject only to London arbitration. As the district court ruled, subject to just— It sounds like an ambiguity, in which case, since it's your document, you're on the short end there, aren't you? The document was actually drafted by my friends on the other side and their agents, and they left that language in. And the real issue here, I think, as you pointed out, Your Honor, is that there's nothing either in the text of the agreement or in the endorsement itself that makes the endorsement displace paragraph U. Well, I mean, as for the endorsement, it says UK and Bermuda insurers only, and to say that that's part of the title seems to be a weak argument. The stronger argument is that there's some ambiguity based on paragraph C, which seems to run into U. Are there any other London arbitration clauses in this document? There are. There's no dispute that the London arbitration clauses refers to endorsement number two that Your Honor is mentioning. But the background principle here under New York law is that where there is an endorsement, and I agree with Your Honor that the UK and Bermuda only language is very clear, and it's not part of the title as the district court ruled, and so the only way to give meaning— But the London arbitration clause is endorsement number two, which has a parenthetical saying UK and Bermuda insurers only, and this is not a UK or Bermuda insurer. That is absolutely correct, Your Honor. Infrasure is a Swiss insurer, and therefore, although the base form policy is subject to the London arbitration clauses, it's only subject to those clauses if the clause applies, and the clause doesn't apply because infrasure is not a UK or Bermuda insurer. And that's exactly what the district court ruled under its plain text interpretation. If I go back to paragraph C and explain why that doesn't change the result here, my friends on the other side ignore the full text of the first sentence of paragraph C. Paragraph C, the first sentence of paragraph C says, except as otherwise agreed, then the liability falls for him to the master policy. Except as otherwise agrees brings in all of the certificate and brings in the endorsements because they've agreed to them. So that first sentence means everything that the reinsurance trumps the base policy, and therefore, when you get to the second sentence, it's simply saying and clarifying that the reinsurance is also subject, where applicable, to the London arbitration clauses. Nothing there says that the London arbitration clauses apply to every dispute or otherwise displace the paragraph U. And it's just Livingston said, if paragraph C was intended to displace paragraph U, why a couple pages later is it sitting there and not marked out as included in the party's agreement? The district court here sought mightily to construe and to harmonize and to give meaning to all terms in the agreement, and the best way to do that is to understand that endorsement number two, the London arbitration clauses, apply as their terms say to UK and Bermuda insurance only and all other insurances, all other disputes under the agreement are governed by paragraph U. And the reason that the London arbitration clauses are in the agreement is because this is one insurance agreement in a much broader reinsurance program that FEMTAC and its agent put together. And as FEMTAC concedes, and that's on JA10119, I believe, those reinsurers also included UK and Bermuda insurers. And so in that instance, the London arbitration clauses would apply, but where we have a Swiss reinsurer, and the clauses don't apply. So this is the best interpretation to give meaning to the full agreement. And of course, were there any dispute as to whether paragraph U applies in full, at the very least, the arbitrator qualifications provisions in paragraph U should apply, because there's nothing in the endorsement that addresses qualifications. And in fact, the endorsement contemplates that the base form reinsurance policy will address qualifications, and those qualifications are only found in paragraph U4. And so even if there was a dispute, you would at least enforce that provision. If you don't apply U, I don't understand why you can take out U4 and have that apply. Well, Your Honor, under New York law, endorsements trump, concurrently and contemporaneously executed endorsements trump base form policies only to the extent there's a conflict. And endorsement number two doesn't address arbitrator qualifications, and therefore, there's no language in there that could displace language in U4. I thought endorsement number two, according to the briefs, would require only a single arbitrator. No, Your Honor, my understanding is that both the London arbitration clauses and U4, actually U1, require three arbitrators. And so there's actually very, it's harmonious. You'll see in paragraph— I know U1 requires, but if U1 doesn't apply, I don't understand why U4 would survive. Because they're independent sections. But again, you don't have to reach that, Your Honor, because there's nothing pointing you to apply any portion of the London arbitration clauses because there's not a UK or Bermuda insurer. I'm just saying that you can read these provisions together since the arbitrator qualifications are only addressed in U4 and not in the endorsement at all. Perhaps your better argument is that 7 would obviously be included, notwithstanding, even if the arbitration took place for a UK or Bermuda insurer, because that's the one that has the honorable engagement with, which is the basic. Yeah, absolutely, Your Honor. So I think if there are no further questions— Thank you. —we'd urge you to affirm. Thank you. Well, here we are. Thank you, Your Honor. To pick up the point that you just raised, there's no contingency in paragraph C or any indication that it incorporates the title, which is the only thing in this entire contract that indicates that there's any special treatment for UK or Bermuda insurers. So there's no— You're on page 160, right? I'm on paragraph— Looking at endorsement number 2? I'm looking at paragraph C, Your Honor. And there's nothing in the second sentence of paragraph C. Again, that's— I don't know what you're talking about. Could you remind me what page we're on? Page— Yes, Your Honor, excuse me. Page 145. That's paragraph C. What do the titles have to do with it? It doesn't incorporate the title, and that is my argument. It refers only to the London arbitration clauses. It doesn't say endorsement number 2. It doesn't say the London arbitration clauses. How many London arbitration clauses are there in this? There is one overall arbitration agreement— I understand that. —arbitration in London. I asked you how many— There's only one clause here, and that's an endorsement number 2. That's the London arbitration provision, right? Well, Your Honor, I submit the use of the plural is really referring to the various paragraphs. I mean, I see two numbered clauses in the endorsement. Use of the plural could mean we may have some or we may have one or may not have one or have two. We're talking generally about London insurance clauses, and it's subject to London insurance clauses. Then you look at the London insurance clause, and it says, in parens, U.K. and Bermuda insurers only, which is not you. It is— That title— So, Your Honor, I submit— You're saying— Why is that a title? That's what I don't— Why do you think that parenthetical— Or at least the title that is excluded by the titles clause? The titles clause says the several titles of the various paragraphs. That's that little part at the beginning of each paragraph. That's not this. This is something up at the top that governs the whole— I see. I'm glad you raised that, Judge Rakoff. Yes. If you read on a couple more words, it says the several— the titles of the various paragraphs of this certificate. So, again, that uses the word certificate, which turns out to be key here. The certificate includes the endorsement of— I don't know if it says the titles of the paragraphs. The several titles of the various paragraphs of the certificate. Are inserted, et cetera. Yes, Your Honor, of the certificate, and the certificate includes the endorsements, so that automatically includes the paragraphs of the endorsements. So you see, in Fisher's argument that you can't apply the titles clause to the endorsement title fails, that's exactly what the parenthetical in the titles clause addresses. The parenthetical in the titles clause brings in the titles of endorsements to the controlling—to the scope of the titles. Are you saying that, under this agreement, you have to ignore the titles? Yes, Your Honor, of the endorsement and the paragraphs. Let me ask you to turn to page 144, and if you would look at paragraph 16. If you—did you see that? Yes, Seed and Company Share, nil. And if you ignore the title, what do you have?  And what would that mean without the title? That would mean that— Nil. It would mean nothing. So, in other words, we have to apply this with some reason, because this absolutist approach, this may not be all that well written, but it certainly doesn't mean you have to ignore all of the titles. Well, Your Honor, may I— Go ahead. These are declarations. I know they're declarations. In the titles clause— But declarations are part—they're the most important part. Absolutely, but in terms of applying the titles clause, the titles clause expressly mentions endorsement titles. Well, following up Judge Raker's question, what makes you think U.K. and Bermuda insurers only is a title? Well, because of the capitalization, the bolding, the fact that it's repeated twice. Well, what if you went to the opera and you opened up the playbill and it said, La Traviata, Paren, please turn off your cell phones. Would that be part of the title? It would be if it repeated on every page of the program, along with every other element that was part of the title. Please turn off your cell phones? I looked up title in the American Heritage Dictionary, and a title in law, according to one dictionary, is a heading that names a document, statute, or proceeding. So it does seem that there would be an argument that this is not really part of the title. It's a paren that's telling you something about to whom this provision will apply. Well, first of all, I think it's, whatever it is, it's clearly within the scope of the titles clause. And, you know, the case law in this circuit is very strong on titles clauses. They're always enforced, that is to say, titles, even when they include a matter that— I don't have the Second Circuit being preoccupied with titles clauses. Well, Your Honor, there's— Yes, there's really, if you look at footnotes 6 through 8 of our opening brief, you'll find what's effectively a tsunami of cases on titles clauses. And they uniformly refuse to enforce titles clauses to limit the provisions to which they apply, even when the titles clause includes something that might appear to be instruction, an instruction or a direction. So, for example, the LaSalle v. City Court case, which is mentioned in footnote 6, seems to have an instruction that the provision is applicable only in the case of default, when, in fact, the court held quite the opposite, that the provision was a general application. And the same would be true of endorsement number 2 here. Thank you. Thank you both. We will reserve decision.